UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SCOTT BROOKS,                              No. 2:09-cv-01514-MCE

        Appellant,

    v.                                   **MEMORANDUM AND ORDER**

FOSTER L. BROOKS and
TERESA R.L. BROOKS,

        Appellees.

----oo0oo----

Appellant Scott Brooks ("Scott") appeals the Bankruptcy Court's order in favor of Foster L. Brooks ("Foster") and Teresa R.L. Brooks (collectively "Debtors" or "Appellees").  Pursuant to its oral decision on May 4, 2009 and subsequent written order on June 2, 2009, the bankruptcy court granted the Debtors' motion to confirm their first amended Chapter 13 plan.  For the reasons set forth below, the bankruptcy court's order will be affirmed.

///

///

///

**BACKGROUND**

Around 2001, Scott Brooks offered his brother, Foster Brooks, a job as manager of two car washes he owned, including Dribbles Carwash, Inc. ("Dribbles Carwash") in Manteca, California.  Foster accepted the offer and was later granted a ten percent ownership interest in Dribbles Carwash.  Around 2004, the employment relationship between the brothers ended.

On October 19, 2005, Foster filed a lawsuit in San Joaquin County Superior Court alleging wrongful termination and other claims against Scott, Scott's wife, Sherry Brooks, and Dribbles Carwash.  Scott subsequently filed a cross-complaint for defamation and other related causes of action.  The state court action remains ongoing.

On August 22, 2008, Foster and Teresa Brooks filed a petition for bankruptcy under Chapter 13.  They concurrently filed a proposed Chapter 13 plan.  Among the debts Appellees sought to discharge through the proceeding was any debt owed to Scott.  The schedules submitted along with the initial reorganization plan did not list the state court lawsuit as an asset despite the fact that Appellees believed it had substantial value.

On October 15, 2008, Scott filed an objection to the proposed plan and at the November 10, 2008 hearing, the bankruptcy court denied plan confirmation for failure to include the lawsuit as an asset.

On February 24, 2009, Appellees filed an amended plan which included the lawsuit and in which they promised to pay their unsecured creditors in full.

2

1   As a funding source for those payments, Appellees cited their

2   potential recovery from the pending state court litigation, and

3   placed a value on that lawsuit of $750,000.00.  Scott filed an

4   opposition to the amended plan.  On May 4, 2009, the court orally

5   granted Appellees' motion to confirm their amended plan even

6   though the unsecured creditors would receive nothing under the

7   plan unless the Debtors prevailed in their ongoing state court

8   action against Scott and Sherry Brooks and Dribbles Carwash.

9       During the course of the May 4th hearing, the bankruptcy

10  court explained that Appellee's initial plan confirmation failed

11  largely because of non-compliance with 11 U.S.C. § 1325(a)(4),

12  which requires that debtors meet the so-called "best interest of

13  the creditors" test.[1]  The court concluded that defect was cured

14  by the amended plan which listed Appellees' lawsuit as an asset

15  of the bankruptcy estate.

16      The bankruptcy court went on to reject Scott's other

17  objections concerning the nature and status of the state court

18  litigation, specifically stating that it declined to "make any

19  findings or conclusions" with respect to that litigation.  ER at

20  429.[2]

21  ///

22  ///

23  ///

24

25      [1] The bankruptcy court found that the Debtors failed to
26  properly take such interests into account because they improperly
    placed no value on their lawsuit.

27      [2] This designation refers to Appellant Scott Brook's Excerpt
    of Record on Appeal, filed concurrently with Appellant's Opening
28  Brief on September 22, 2009.

The Court noted that if Appellees "do not [prevail], or if they do but do not obtain enough to pay all the creditors in full within 60 months, this bankruptcy case will be dismissed and they will not receive a Chapter 13 discharge unless they obtain the necessary funds from some other source."   Id.

The bankruptcy court further described Scott's strategy as a "transparent" attempt to "convince the court that the debtors' litigation has a poor chance of success, get the case converted to Chapter 7 then convince a Chapter 7 trustee to accept a fairly nominal settlement like the one recently offered to the debtors." Id.   The court declined to proceed in that fashion, stating that an "accurate evaluation of the litigation in this court is not possible...the best method of liquidating the claim is to allow it to go forward in state court."   Id.

The court further clarified in its June 2, 2009 Memorandum that Class 7 unsecured creditors will receive a payment only if the debtors recover on their claim against Scott.  Such creditors stand to obtain nothing, however, in the absence of such recovery.

Scott now appeals the bankruptcy court's decision.

**STANDARD**

An appellant may petition the district court for review of a bankruptcy court's decision.  Fed. R. Bankr. P. 8013.  The applicable standard of review is identical to that employed by circuit courts of appeal in reviewing district court decisions. ///

1   See Heritage Ford v. Baroff (In re Baroff), 105 F.3d 439, 441
2   (9th Cir. 1997).  Legal conclusions are reviewed on a de novo
3   basis, and factual determinations are assessed pursuant to a
4   "clearly erroneous" standard.  Murray v. Bammer (In re Bammer),
5   131 F.3d 788, 792 (9th Cir. 1997) (en banc).

6        Findings of fact are "clearly erroneous" only if the
7   reviewing court is "left with the definite and firm conviction
8   that a mistake has been committed."  In re Marquam Inv. Corp.,
9   942 F.2d 1462, 1466 (9th Cir. 1991) (quoting United States v.
10  United States Gypsum Co., 333 U.S. 364, 395 (1948)).  "A finding
11  is 'clearly erroneous' when although there is evidence to support
12  it, the reviewing court on the entire evidence is left with a
13  definite and firm conviction that a mistake has been committed."
14  Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting
15  United States Gypsum Co., 333 U.S. at 395).  "If the bankruptcy
16  court's account of the evidence is plausible in light of the
17  entire record viewed, it must be upheld even though we might have
18  weighed the evidence differently had we been sitting as the trier
19  of fact."  In re Forbes, 215 B.R. 183, 187 (8th Cir. BAP 1997)
20  (citing Anderson, 470 U.S. at 573-74).

21       "Whether property is included in the bankruptcy estate is a
22  question of law."  Ramsay v. Dowden (In re Central Arkansas
23  Broad. Co.), 68 F.3d 213, 214 (8th Cir. 1885).  "Chapter 13 plan
24  confirmation issues requiring statutory interpretation are
25  subject to de novo review."  Hagel v. Drummond (In re Hagel), 184
26  B.R. 793, 795 (9th Cir. BAP 1995).

27  ///
28  ///

1    The appellant has the burden of proof in convincing the

2   reviewing court that such error has been committed, and the

3   reviewing court should not reverse simply because another

4   decision could have been reached.  In re Windsor Indus., Inc.,

5   459 F. Supp. 270, 275 (N.D. Tex. 1978).

6

7                              **ANALYSIS**

8

9    Scott argues there are three reasons why the bankruptcy

10  court erred in its confirmation of the amended plan.  According

11  to Scott, the Debtors' amended plan fails the best interest of

12  the creditors test, the feasibility requirement, and the good

13  faith requirement.  These tests are codified in 11 U.S.C.

14  § 1325(a)(4), 11 U.S.C. § 1325(a)(6), and 11 U.S.C. § 1325(a)(3),

15  respectively.

16

17      **A.   The Debtors' Amended Plan Satisfies the "Best Interest**
          **of the Creditors" Test.**
18

19    Scott contends that "Debtors' promise to pay their unsecured

20  creditors 100 percent is based solely on their hope and

21  speculation that they will recover sufficient funds from the

22  state court lawsuit to do so."[3]  Opp. Br. 13:6-9 (internal

23  quotations omitted).

24  ///

25

26        [3] In its June 2, 2009 Memorandum, the bankruptcy court
    clarified that the amended plan be further changed to reflect
27  that the unsecured creditors would not receive "100 percent" but
    would receive a dividend of whatever amount the Debtors receive
28  from the state court lawsuit.

                                6

1  Scott argues that because the Debtors failed to show they have

2  any ability to actually pay their creditors 100 percent, or in

3  fact, anything, the plan fails the best interest of the creditors

4  test.  In addition, Scott alleges that the Debtors have failed to

5  act in the best interest of the creditors because Scott offered

6  $35,000 to settle.  Scott states that this offer would have

7  produced a dividend to the unsecured creditors and that

8  consequently those creditors would have received something.  On

9  the other hand, according to Scott, they stand to receive nothing

10  under the Debtors' amended plan unless a recovery is made.  Opp.

11  Br. 13:17-23.

12       The bankruptcy court must assess whether a Chapter 13

13  proposed plan provides general unsecured creditors with at least

14  as much as they would receive under a hypothetical Chapter 7

15  liquidation case.  11 U.S.C. § 1325(a)(4).  The statute

16  specifically provides that a court shall confirm a plan if:

17       the value, as of the effective date of the plan, of
         property to be distributed under the plan on account of
18       each allowed unsecured claim is not less than the
         amount that would be paid on such claim if the estate
19       of the debtor were liquidated under Chapter 7 of this
         title on such date.
20

21  11 U.S.C. § 1325(a)(4).  To make such a determination, the court

22  must consider the liquidation value of the estate's assets.  In

23  re Beck, 309 B.R. 340, 353 (Bankr. N.D. Cal. 2004); In re Klein,

24  57 B.R. 818 (9th Cir. BAP 1985).

25  ///

26  ///

27  ///

28  ///

Therefore, in performing the best interest of the creditors test, a "comparison is made between 1) the value of the property which unsecured creditors are to receive under the debtor's proposed plan or postconfirmation plan modification, and 2) the net value of unencumbered nonexempt property which would be distributed to those creditors under a hypothetical Chapter 7 liquidation of the debtor's estate." In re Forbes, 215 B.R. at 189. "The focus of the 'best interests of the creditors' analysis rests upon a hypothetical distribution to unsecured creditors under Chapter 7." Id. at 190.

Code Section 541 instructs the liquidation inquiry, guiding what should be included in the estate. Id. Section 541(a)(1) specifically includes as property of the estate, "all legal and equitable interests of the debtor in property." 11 U.S.C.A. § 541(a)(1). This phrase has been interpreted as sufficiently broad to include causes of action which are in existence as of the petition date. In re Forbes, 215 B.R. at 190; In re Central Arkansas Broad. Co., 68 F.3d at 214. Moreover, the "conditional, future, speculative, or equitable nature of an interest does not prevent it from being property of the bankruptcy estate." Affiliated Computer Sys., Inc. v. Sherman (In re Kemp), 52 F.3d 546, 550 (5th Cir. 1995). See also, e.g., In re Pendleton, 225 B.R. 425 (Bankr. E.D. Ark. 1998) (exempt proceeds from the debtors' personal injury settlement must be characterized as disposable income under § 1325(B)(2) and therefore must be included in the plan).

///

///

1    The amended plan satisfies the best interest of the

2  creditors test because, as the bankruptcy court noted, the

3  amended plan provides that should the Debtors recover any money

4  from the state court litigation, that recovery will become part

5  of the estate, with any monies received being distributed to

6  unsecured creditors.  ER at 441.

7    In his Memorandum of Points and Authorities in Support of

8  Objections to the [Original] Chapter 13 Plan, Scott initially

9  argued that the "State Court Litigation is an asset of the

10  estate, and the Debtors are required to use good faith efforts to

11  assign a value to it."  ER at 97.  Appellees thereafter complied

12  with the November 10, 2008 bankruptcy order and responded to

13  Scott's contention that the litigation be included.  When

14  Appellees assigned such a figure and included it in the schedule,

15  finding that the unsecured debtors be paid 100 percent, Scott

16  argued that the percentage was incorrect, although he went on to

17  indicate that he had no conceptual problem with respect to the

18  recommended plan.  ER at 442.

19    This Court agrees with the bankruptcy court's conclusion

20  that Scott's actions appear to evince an attempt to get

21  Appellee's Chapter 13 plan rejected, thereby causing the Chapter

22  13 proceeding to be converted into a Chapter 7 proceeding and

23  compelling the Chapter 7 trustee to accept a settlement offer in

24  the state court proceeding against Scott.  ER at 429. The

25  Appellees have, however, complied with the requirements of both

26  the statute and the bankruptcy court's orders.

27  ///

28  ///

1   Moreover, at its May 4, 2009 hearing and in its subsequent order,

2   the bankruptcy court clarified that unsecured creditors would

3   receive a dividend only if the Debtors recover from their ongoing

4   state litigation.  ER at 467.  As stated above, the court went on

5   to make it clear that Appellees' debt would not be discharged

6   even if the amounts paid to the unsecured creditors could not be

7   financed through proceeds obtained from Appellees' lawsuit.

8       Therefore, following a de novo review of this matter, the

9   Court concludes that Debtors' Chapter 13 plan met the best

10  interests of creditors requirement for confirmation, even though

11  the payments included a potential award from a pending lawsuit.

12

13      **B.    The Debtors' Amended Plan is Feasible.**

14

15      Scott further argues that the bankruptcy court erred because

16  the Debtors' amended plan is not feasible.  Scott again

17  reiterates that their amended plan is based on a "large

18  litigation recovery" which is "pure speculation."  Opp. Br.

19  16:23-24.

20      Pursuant to 11 U.S.C. § 1325(a)(6), a court should not

21  confirm a plan unless the court finds that the debtor will be

22  able to make all payments under the plan and to comply with the

23  plan.  11 U.S.C. § 1325(a)(6).  This requirement goes to the

24  feasibility of the plan.  In re Gavia, 24 B.R. 573, 574 (9th Cir.

25  BAP 1982).  "[T]he feasibility test as applied under the

26  Bankruptcy Act...requires a court to be satisfied that the debtor

27  has, not only the present ability, but the future ability to

28  comply with the proposed plan."

1  In re Hockaday, 3 B.R. 254, 255 (Bankr. S.D. Cal. 1980).  To
2  satisfy this requirement, the court must make a "thorough review
3  of the debtor's financial picture."  Id.

4      As stated previously, the amended plan provides for payment
5  to the unsecured creditors should the debtors recover from the
6  litigation.  However, the bankruptcy court specifically held that
7  "the plan's feasibility does not hinge on the likelihood of
8  success in the litigation."  ER at 429.  In fact, it stated that
9  "[i]f unsuccessful, [the Debtors] will not receive a discharge
10 because they are nonetheless obligated to pay creditors in full."
11 Id.

12     Therefore, the bankruptcy court found that "the plan's
13 feasibility hinges on the debtors' financial ability to move
14 forward with that litigation" and that Debtors made an adequate
15 showing that the state court action will continue to be funded.
16 Id.  Mary Rose Garbiso, the mother of Debtor Terry Brooks, stated
17 in her declaration that she plans to continue to provide
18 assistance to the Appellees so that the litigation can move
19 forward.  Scott objects to the court's reliance on Debtor's
20 mother to finance the lawsuit.  However, "[w]hen there are two
21 permissible views of the evidence, we may not hold that the
22 choice made by the trier of fact was clearly erroneous."  In re
23 LeMaire, 898 F.2d 1346, 1349 (8th Cir. 1990).  "Even greater
24 deference is required where factual findings call for an
25 assessment of witness credibility, and no documents or objective
26 evidence contradict the testimony."  In re Central Arkansas
27 Broad. Co., 68 F.3d at 215.
28 ///

1   Here, the bankruptcy court reached its determination on
2   feasibility after reviewing the declaration of the Debtor's
3   mother and further documentation of her commitment to fund the
4   lawsuit as proof that the litigation will continue.

5        Further, at the hearing on April 6, 2009, the bankruptcy
6   court specifically rebutted Scott's claim that the tentative
7   ruling approving the plan bypassed the issue of feasability,
8   explaining that no one can guarantee the outcome of litigation.
9   ER at 408.  Scott argued at the hearing and continues to contend
10  that including the lawsuit is like having a debtor's plan hinge
11  on the proposed sale of property or be dependent upon gambling
12  winnings.  Opn. Br. 16:6-11 and 17:6-14 (citing In re Hogue, 78
13  B.R. 867 (Bankr. S.D. Ohio 1987) and In re Cushman, 263 B.R. 293
14  (Bankr. W.D. Mo. 2001)).  The Debtors here, however, have not
15  only included the lawsuit in their plan, they have also placed an
16  estimated value on their potential recovery.  As indicated above,
17  this is not only permissible, but required in instances of
18  Chapter 13 plan confirmation.  Including the lawsuit is
19  distinguishable from speculative winnings from gambling or gains
20  to be acquired from a proposed sale of property.  As the
21  bankruptcy court clarified: "any time a debtor has an
22  unliquidated claim, they're entitled to pursue it and the fact
23  that they can't make assurance that they're going to win doesn't
24  mean you can't confirm the plan."  ER at 409.  Additionally, as
25  the bankruptcy court noted, Appellees' reliance on their
26  litigation against Scott does not extend to all claims, but
27  rather only to those involving unsecured creditors.
28  ///

Under those circumstances, the Court finds it was reasonable for the plan to include a repayment plan should the Debtors' lawsuit produce a recovery.

Thus, in light of the foregoing discussion, it was not error for the bankruptcy court to find the amended plan met the feasibility requirement pursuant to Section 1325(a)(6).

**C.    The Debtors' Amended Plan was Proposed in Good Faith.**

Scott contends that the Debtors proposed their amended plan in bad faith for two reasons.  First, the Debtors "failed to provide any evidence that their lawsuit has a value of $750,000." Opp. Br. 23:2-3.  Second, "the complete turnaround between Debtors' original plan offering nothing to unsecured creditors - and their amended plan - promising at least 100 percent to their unsecured creditors - is in bad faith..." because there was no change in the Debtors' financial abilities.  Opp. Br. 23:6-8.

Pursuant to 11 U.S.C. § 1325(a)(3), a Chapter 13 plan that is confirmed must be submitted by the Debtors in good faith.  The term "good faith" is not defined.  Nor does the legislative history provide any guidance as to the term's meaning.  In re Warren, 89 B.R. 87, 90 (9th Cir. BAP 1988).  In reviewing a bankruptcy court decision on good faith, this Court has an independent duty to make a reasoned assessment of the debtor's good faith.  Id. (citing In re Hale, 65 B.R. 893, 897 (Bankr. S.D.Ga. 1986)).  Although no definition per se has been provided, the Ninth Circuit has articulated guidelines on what should be considered.

13

It has noted that bankruptcy courts should determine good faith on a case-by-case basis.  In re Goeb, 675 F.2d 1386, 1390 (9th Cir. 1982).  The Court has also noted the proper inquiry as including "whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner."  Id.

Here, the plan was proposed in good faith.  On November 10, 2008, the bankruptcy court found Debtors' original plan was not proposed in good faith.  The court cited the fact that the Debtors failed to disclose the pending civil action and that when the Debtors did include the lawsuit, they applied a "no cash value."  The court believed that the pending action had value and thus the original plan which provided zero percent distribution was in bad faith.  Debtors amended their original plan to include the pending civil action.  Thus, the remedy to the bankruptcy court's initial objection to the plan was to include the pending action as an asset of the bankruptcy estate.  The Debtors subsequently included the lawsuit and assigned it a $750,000.00 value.  They also amended their plan and provided that unsecured creditors would be paid out if any proceeds derived from the lawsuit.  Consequently, the bankruptcy court, in reviewing the amended plan, found that "to the extent the Court was concerned that the debtors were not proposing a plan in good faith, the court's concerns have been addressed."  ER at 429.

///
///
///
///

14

1    There is no evidence before this Court that the Debtors
2 personally misrepresented any facts in their proposed
3 reorganization plan.  Nor is there evidence that they unfairly
4 manipulated the Bankruptcy Code.  The Debtors complied with court
5 orders and submitted a feasible and equitable amended plan which
6 the bankruptcy court properly confirmed.

7    Therefore, this plan was not submitted in bad faith.

9                          **CONCLUSION**

11    Based on all the foregoing, the decision of the bankruptcy
12 court is hereby AFFIRMED.[4]

13    IT IS SO ORDERED.

 Dated: April 2, 2010

                                    _____
                                    MORRISON C. ENGLAND, JR.
                                    UNITED STATES DISTRICT JUDGE

_____

27    [4] Because oral argument was not of material assistance, this
matter was deemed suitable for decision without oral argument.
28 Local Rule 230(g).